IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex. rel.* MICHAEL McGEE, AND PEOPLE OF THE STATE OF ILLINOIS *ex rel.* MICHAEL McGEE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 3482 |
| v. | ) ) | Judge Thomas M. Durkin |
| IBM CORPORATION, et al., | ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The parties in this *qui tam* case are at odds over the defendant's wide-ranging claims of attorney-client privilege and work product as to thousands of documents defendant is withholding from discovery. Of course, step one in asserting the claim of privilege or work product as to documents is the compilation of a privilege log. Under Fed.R.Civ.P 26(b)(5), such a log must be sufficiently detailed in its description of the documents that an assessment of the claim can be made. The privilege log the defendant has submitted, woefully inadequate in more than one aspect, does not begin to approach that basic requirement.

We begin with a reminder of what the attorney-client privilege and the work product doctrine are all about. The attorney-client privilege "'is the oldest of the privileges for confidential communications known to the common law.'" *United States v. Jicarilla Apache Nation,* 564 U.S. 162, 169 (2011) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn,* 449 U.S.

at 389. *See also generally* the extensive discussion in *Pampered Chef v. Alexanian*, 737 F.Supp.2d 958 (N.D.Ill. 2010). While the goal is laudable, it is, after all, a derogation in the search for the truth and so, the privilege must be narrowly construed. The privilege ultimately obstructs the search for truth and to the long recognized obligation of all citizens to give evidence—an obligation expressed in the fundamental maxim that "'the public...has a right to every man's evidence....'" *United States v. Nixon*, 418 U.S. 683, 709 (1974). "[E]xceptions . . . are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Id.* at 710. *Accord United States v. Jacarilla Apache Nation*, 564 U.S. 162, 189 (2011); *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990).

The party seeking to invoke the privilege bears the burden of proving all of its essential elements:

> 1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)(quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev.1961)); *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011).

The work-product doctrine is distinct from the attorney-client privilege. Codified at Fed.R.Civ.P. 26(b)(3), the work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621–22 (7th Cir.

2010); *See also Hickman v. Taylor*, 329 U.S. 495 (1947); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711 (N.D.Ill. 2014). As such, the doctrine protects from discovery documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its ... agent." Fed.R.Civ.P. 26(b)(3)(A); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1022 (7th Cir. 2012). As with the attorney-client privilege, the burden is on the party asserting work-product protection to show that a document was prepared in anticipation of litigation. "There is a distinction between precautionary documents 'developed in the ordinary course of business' for the 'remote prospect of litigation' and documents prepared because 'some articulable claim, *likely* to lead to litigation, [has] arisen.'" *Sandra T.E.*, 600 F.3d at 622 (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir.1983) (emphasis added) (alteration in original) (internal quotation marks omitted). Only documents prepared in the latter circumstances receive work-product protection. *Sandra T.E.*, 600 F.3d at 622.

Even the most cursory perusal of the defendant's privilege log shows that it fails to meet the defendants' burden of establishing the applicability of either the attorney-client privilege or the work-product doctrine. Indeed, the defendants' seeming indifference to the requirement of the Federal Rules of Civil Procedure is striking. It is all the more striking, coming as it does, for a company no doubt experienced in federal litigation. First of all, none of the authors or recipients of the documents are identified. The lawyers at the defendant's disposal – seven are currently on appearance in this case – may have a familiarity with the jobs of the many people listed as authors and recipients of the documents at issue; but the court obviously does not and it is the court which must rule on privilege claims. Presumably, the plaintiff finds itself in the same position as does the court. It would appear that for nearly all the documents at issue, an attorney was not the author or

among the recipients. That doesn't necessarily scotch a claim of privilege or work product, but it does raise red flags.

Moreover, in the corporate context, the attorney-client privilege extends only to an employee who communicates with counsel at the direction of corporate superiors regarding matters within the scope of the employee's duties for the purpose of securing legal advice. *See Upjohn Co. v. United States,* 449 U.S. 383, 394 (1981). Communications going outside that boundary can waive the privilege. *See Acosta v. Target Corp.*, 281 F.R.D. 314, 323 (N.D. Ill. 2012). Accordingly, defendant must produce a privilege log that identifies the capacities of each author and recipient at the time the document was composed and distributed. *See, e.g., Huntington Chase Condo. Ass'n v. Mid Century Ins. Co.*, 2017 WL 440730, at *7 (N.D. Ill. Feb. 1, 2017); *In re: Fluidmaster, Inc.*, 2016 WL 6599947, at *8 (N.D. Ill. Nov. 8, 2016); *Yahnke v. Cty. of Kane*, 2013 WL 4537865, at *6 (N.D. Ill. Aug. 27, 2013); *Pactiv Corp. v. Multisorb Techs., Inc.*, 2012 WL 1831517, at *2 (N.D. Ill. May 18, 2012)

Some entries have no date. The defendant must also provide a date for each document in the privilege log. It would appear that some documents may have been prepared or received by individuals who were not longer in the defendant's employ at the time. Distribution of materials to third parties outside the company would obviously, with rare exceptions, result in a waiver, *see Kirsch v. Brightstar Corp.*, 68 F.Supp. 3d 846, 853–54 (N.D. Ill. 2014), while documents authored by employees no longer working for defendant would be unlikely to meet the requirement that communication be at the direction of corporate superiors regarding matters within the scope of the employee's duties for the purpose of securing legal advice. *See Upjohn*, 449 U.S. at 394. And undated entries for which a claim of work product is asserted face an uphill battle, for obvious

reasons.

That brings us to the defendant's descriptions of withheld documents. Staying in the work product category, a number of documents are said to be created in 2007 or 2008. This case was filed in 2011 so, without more, the claim that litigation was anticipated based on an articulable claim three or four years earlier must be viewed with a jaundiced eye. *See Binks Mfg.*, 709 F.2d at 1118 ("The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege; the privilege is not that broad."). Some of these entries appear to be nothing more than a retention of documents at the request of an attorney; sort of a hang-on-to-these-just-in-case request. That's not an articulable claim; it's a routine precaution.

Document descriptions like "reflecting request for legal advice" do not make out a claim of attorney-client privilege. "Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *Judson Atkinson Candies, Inc. v. Latini Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008). The question is whether legal advice or a client confidence is revealed.

Descriptions of documents entailing contract negotiations and invoices are similarly suspect. A large part of attorney input in contract negotiations can be business, as opposed to legal advice. *Sandra T.E.*, 600 F.3d at 620 (counsel must be acting in their capacity as legal advisor to cloak communication with the privilege); *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)(business advice cannot be considered legal services). Documents dealing with invoices seem even farther removed from the realm of client confidences and legal advice. Significantly, the

5

defendant's executive on the project at issue stated in one of his emails that the role of in-house counsel mentioned in nearly all of the document descriptions was "just to provide business advice of a legal nature." [Dkt. #228-16, at 3/15].

The plaintiff raises a number of other issues, such as subject matter waiver through production of documents, and documents regarding "criminal activity" or "ethical violations" or double billing." *See Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 447 (7th Cir. 2011)(discussing the crime-fraud exception to the privilege). Based on all these concerns, the plaintiff asks that the 2,150 documents in the defendant's privilege log be ordered produced for an *in camera* inspection. But that, is not a substitute for the log that is demanded by the plain language of the Federal Rules of Civil Procedure.[1] Nor can a court unfamiliar with the litigation be expected to discern documents nearly a decade old. An *in camera* inspection is not a substitute for compliance with the Federal Rules of Civil Procedure, nor is it a convenient vehicle that allows a shifting of the burden of discovery from the parties and their lawyers to the court under the circumstances that now exist. A court has discretion when and whether to conduct an *in camera* review. *Slaven v. Great American Insurance Co.,* 2015 WL 1247431, 8 (N.D.Ill.2015). Unlike *American Nat. Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 880 (7th Cir. 2005), there is nothing manageable about the quantity of documents that the plaintiff is asking the court to review because of the defendant's claim of privilege – a claim which is alleged to be improper. Nor, at this juncture, are we in a position to make a judgment about the correctness of the defendant's claims.

---

[1] The Federal Rules of Civil Procedure, which have the force of statutes, *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 163 (1988); *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 392 (7th Cir. 2002), *cert. denied*, 540 U.S. 1068 (2003), are to be accorded "their plain meaning. . . and generally with them, as with a statute, '[w]hen we find the terms. . . unambiguous, judicial inquiry is complete. . . .'" *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989).

Whether to conduct an *in camera* review involves an exercise of discretion. *United States v. Barrier Indus., Inc.*, 1997 WL 16668, at *2 (S.D.N.Y. 1997). We shall not excuse the filing of an incomplete privilege log that does not comport with the mandatory requirements of the Federal Rules of Civil Procedure. To do otherwise would be an unsound exercise of discretion – even if we had the statutory authority to excuse what IBM has done thus far.

Whether an *in camera* inspection of the thousands of documents at issue will be conducted by this court – or by a special master, which the Seventh Circuit has recognized we have authority to retain where the documents cease to be manageable – that is where they do not number in the mere hundreds, *American Nat. Bank & Trust Co. of Chicago*, 406 F.3d at 880 – the defendants are required to reassess its claims of privilege and produce immediately a complete and adequate privilege log. They must keep in mind that the inadequacies that are referred to are but examples; they are not an exhaustive list of all deficiencies. If the defendant decides to maintain its claims as to any documents, it must produce an amended privilege log that complies with and addresses the types of concerns raised in this Opinion. As already noted, I have no familiarity with the actors and actions that are discussed in the documents at issue and, without an adequate log to provide context, even an *in camera* inspection would be futile.

Accordingly, the defendant is ordered to produce a privilege log that is fully compliant with the Federal Rules of Civil Procedure and which will allow the parties to review the claims of privilege in the log. The log must be produced within 10 days from today. The defendant should be aware that the failure to produce an adequate log can, where appropriate, result in a waiver of the privilege. *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 631–32 (N.D. Ill. 2016). And as the defendant hopes to establish the applicability of the

privilege, it should bear in mind, in addition to its obligations to properly invoke and sustain the privilege, the Seventh Circuit's general advice to counsel: "An advocate's job is to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006).

The plaintiff's Motion to Compel IBM to Amend its Privilege Logs is granted and its Motion to Provide Unredacted Documents to the Court for an *In Camera* Inspection is denied without prejudice. At this juncture, we take no position on the plaintiff's castigation of IBM at page 2 of its Memorandum in Support of Motion to Compel [Dkt. #228 at 2] or its claims that IBM is attempting to manipulate claims of privilege. It should be noted that neither unsupported claims of privilege nor unfounded assertions of wrongdoing by either side will be tolerated in this case.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/4/17